**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000404
30-NOV-2015
09:02 AM**

CAAP-13-0000404

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
SCHUYLER G. DeCAIRES, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR NO. 51238)

MEMORANDUM OPINION
(By: Nakamura, C.J., and Leonard and Reifurth, JJ.)

Petitioner-Appellant Schuyler DeCaires (DeCaires) appeals from the denial of his request for post-conviction relief pursuant to Hawai'i Rules of Penal Procedure (HRPP) Rule 40.[1] We affirm.

BACKGROUND

I.

In 1980, DeCaires was convicted of first-degree rape and first-degree robbery. The Circuit Court of the First Circuit (Circuit Court) sentenced DeCaires as a persistent offender to an extended term of life imprisonment with the possibility of parole. DeCaires' convictions and sentence were affirmed by the Hawai'i Supreme Court in 1982.

On June 16, 2010, DeCaires filed a petition for post-conviction relief, arguing that his extended term of imprisonment

_____

[1] The Honorable Richard K. Perkins presided.

violated <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). The petition was denied by the Circuit Court and affirmed on appeal.

On December 2, 2011, almost thirty years after his convictions and sentence had become final, DeCaires filed a "Motion for DNA Testing" pursuant to HRS § 844D-121 (2014). In his motion, DeCaires requested DNA testing of the following evidence he claimed was in the custody of Plaintiff-Appellee State of Hawai'i (State): (1) a rape kit collected from the complaining witness (CW); (2) the CW's panties; (3) the CW's blouse and any other items used to convict him.

II.

A.

Because of DeCaires' delay in bringing this motion, there were no available pre-trial or trial transcripts of the underling criminal case. DeCaires testified at a hearing held on the motion. According to DeCaires, at his 1980 jury trial, he recalled that a tampon was admitted into evidence, which the CW testified she had removed. DeCarries asserted that the CW's brassiere and panties were also admitted into evidence, and he related that the CW said she had taken off her brassiere and panties and placed them on the side. He believed the CW testified that she put her panties back on after the attack. DeCaires did not recall any testimony at trial that the CW's attacker had made contact with the CW's brassiere or panties. DeCaires recalled testimony regarding a rape kit. DeCaires stated that according to the CW's testimony, a rape kit was performed on the CW, but not on the day of the attack. He did not remember how many days later the rape kit was obtained. DeCaires also stated that a medical examiner of some kind had testified at trial that "there was traces of male semen in the rape kit" and that the rape kit had been moved into evidence at trial.

On cross-examination, DeCaires agreed that Robert Rapoza (Rapoza) testified at trial: (1) that Rapoza went to high school with DeCaires; (2) that Rapoza was at the hiking trail

2

with DeCaires before the incident occurred; and (3) that after DeCaires came home that night, DeCaires admitted to Rapoza that he "raped a chick[.]" DeCaires also acknowledged that the CW and Rapoza both identified him at trial.

B.

Ida Quinn (Quinn), an evidence supervisor for the Honolulu Police Department (HPD) evidence room, testified that she was asked to search for any remaining evidence concerning DeCaires' case. Quinn located three evidence sheets concerning: (1) a shirt, brassiere, and panties; (2) a beer bottle and tampon; and (3) a knife. These items were submitted to the court in 1980. Quinn did not find any report documenting HPD's receipt of any rape kit or the submission of a rape kit into the HPD evidence room in DeCaires' case. Quinn testified that before evidence in a case is destroyed, HPD's standard procedure requires an authorization in writing from the prosecutor's office and a notification in writing from the detective who is handling the case. Quinn did not find either of these documents in her review of the police reports relating to DeCaires' case. To the best of her knowledge, no evidence was destroyed by HPD in DeCaires' case.

C.

Sara Jane Muldoon (Muldoon), an exhibit clerk for the Circuit Court Legal Documents Section, testified that she searched for exhibits that were submitted into evidence in DeCaires' case. She found exhibit lists for Decaires' case, including an exhibit list that showed all of the items submitted into evidence at trial. The documents she reviewed indicated that exhibits had been submitted to and then returned by the Hawai'i Supreme Court as of 1983. Muldoon was unable to locate any of the exhibits. In her search for relevant records, Muldoon could only find exhibit disposal lists that went back to 1986; she found no documentation relating to the disposal of the exhibits from the DeCaires' trial.

3

D.

At the close of the testimony, DeCaires' counsel conceded that there was no evidence in the case that could be tested for DNA and therefore, there was no longer an issue under HRS Chapter 844D. DeCaires' counsel instead requested that the Circuit Court treat DeCaires' Motion for DNA Testing as an HRPP Rule 40 motion to dismiss based upon Arizona v. Youngblood, 488 U.S. 51 (1988), and relevant Hawai'i case law relating to the State's loss or destruction of evidence.

III.

The Circuit Court subsequently entered its "Order · Denying Petitioner's Motion for DNA Testing Pursuant to HRS § 844D-121" (Order Denying Motion for DNA Testing) on March 12, 2013. In support of this Order, the Circuit Court made the following pertinent findings of fact:

> 1. The instant motion requests that the court order DNA analysis of items Defendant claims were introduced into evidence at his trial, including the complainant's panties and blouse, and a "rape kit," consisting of vaginal and anal swabs, slides and Q-tips.
>
> 2. As indicated in a police laboratory report dated February 15, 1978 and signed by Milton Hong, which report begins at page 61 of State's Exhibit 1 entered into evidence at the hearing held on January 17, 2013, a pair of blue jeans, beige panties, and a tampon that were admitted into evidence at Defendant's trial (according to State's Exhibit 2), were tested for the presence of seminal fluid with negative results. [2/]
>
> 3. The only evidence of the existence of a "rape kit" is the testimony of Defendant at the January 17, 2013 hearing. He testified that, at his trial, the prosecution called a medical expert who testified that traces of semen were recovered from a rape kit that was introduced into evidence.
>
> 4. Honolulu Police Department evidence room supervisor Ida Quinn, however, testified at the hearing that there was no mention of a "rape kit" in any of the three evidence reports documenting items submitted into evidence in Defendant's case or any other indication of the existence of a rape kit in the material she reviewed. She said that all of the items listed on the three evidence reports were

---

2/ The police laboratory report also indicated that the blue jeans and panties tested positive for the presence of blood and that pubic hair of human origin with similar physical properties was found on the panties and tampon.

4

given to the court on February 19, 1980 -- apparently for purposes of Defendant's trial.

5. State's Exhibit 2, the list of exhibits at Defendant's trial, is absent any reference to a rape kit being either marked for identification or admitted into evidence at the trial.

6. <u>Having considered all of the evidence, the court finds that Defendant's testimony concerning the existence of a rape kit is not credible and that there was in fact no rape kit prepared in connection with his case</u>.

7. The other items Defendant seeks to analyze are not available for testing. Searches for them were conducted at both the Honolulu Police Department Evidence Room and the First Circuit Court, but none of the items could be located.

8. The unavailability of this evidence was not the result of bad faith on the part of the Honolulu Police Department, the prosecutor, or the court.

9. There is no evidence that the prosecution withheld from Defendant, as a matter of pretrial discovery, any of the material included in State's Exhibit 1, or precluded defense access to any of the items of evidence listed on State's Exhibit 2.

10. The Court finds the testimony of Ida Quinn and Jane Muldoon credible.

(Emphasis added.)

Based on these findings, the Circuit Court denied DeCaires' motion for DNA testing pursuant to HRS § 844D-121 because the evidence sought to be analyzed did not still exist in a condition that permits DNA analysis. The Circuit Court also denied DeCaires' claim under HRPP Rule 40 that the unavailability of evidence for DNA analysis should result in the reversal of his conviction and dismissal of his case. This appeal followed.

DISCUSSION

I.

Citing <u>Youngblood</u> and <u>State v. Matafeo</u>, 71 Haw. 183, 787 P.2d 671 (1990), DeCaires argues that the State's failure to preserve his trial evidence violated his due process rights and requires that his convictions be vacated. In <u>Matafeo</u>, the Hawaiʻi Supreme Court held that "[i]n certain circumstances, regardless of good or bad faith, the State may lose or destroy material evidence which is 'so critical to the defense as to make a criminal trial fundamentally unfair' without it." <u>Matafeo</u>, 71

Haw. at 187, 787 P.2d at 673 (citation omitted). We conclude that DeCaires' reliance on Youngblood and Matafeo is misplaced and that his argument is without merit.

As DeCaires acknowledges, Youngblood and Matafeo dealt with the situation where evidence is lost or destroyed before trial. In that situation, the Hawai'i Supreme Court in Matafeo concluded that dismissal of charges against a defendant may be warranted where the evidence that is lost or destroyed is so critical to the defense as to make a criminal trial fundamentally unfair without it. In this case, however, we are not dealing with the pre-trial loss of evidence; DeCaires was tried and convicted long ago. Instead, we are dealing with a situation in which DeCaires waited more than thirty years after his trial to seek DNA testing and now claims that his convictions must be overturned because the trial evidence he claims once existed and wants to test cannot be located.

II.

The due process rights of a person convicted after trial are not as extensive as the rights of a person pending trial, who is clothed with the presumption of innocence. See District Attorney's Office for the Third Judicial Dist. v. Osborne, 557 U.S. 52, 68-69 (2009).

> A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."

Id. (citation omitted; brackets in original). Thus, a convicted person is not entitled to assert "certain familiar preconviction trial rights," such as the right to disclosure of exculpatory evidence set forth in Brady v. Maryland, 373 U.S. 83 (1963), in pursuing post-conviction relief. Id.; see Bowling v. Commonwealth, 357 S.W.3d 462, 466 (Ky. 2010). Youngblood and Matafeo, which are based on preconviction trial rights of a

defendant to exculpatory and potentially exculpatory evidence, are inapposite.

In <u>Osborne</u>, the Supreme Court held that States have more flexibility in determining what procedures are needed in the context of postconviction relief than in the preconviction context. <u>Id.</u> at 69. A State's postconviction procedures satisfy due process unless they "offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, . . . transgress[] any recognized principle of fundamental fairness in operation[,]" or "are fundamentally inadequate to vindicate the substantive rights provided." <u>Id.</u> (internal quotation marks and citations omitted).

III.

Hawaiʻi has enacted HRS Chapter 844D to address the claims raised by DeCaires in his request for post-conviction relief. In particular, HRS Chapter 844D, Part XI establishes procedures for post-conviction DNA testing. DeCaires does not contend that the procedures established by Hawaiʻi pursuant to HRS Chapter 844D, Part XI violate due process. He also conceded in the Circuit Court that the trial evidence he sought no longer existed in a condition that permitted DNA analysis and therefore, his motion for DNA testing under HRS Chapter 844D was moot.[3]

---

[3] HRS § 844D-123 (2014) provides, in relevant part:

    (a) The court shall order testing after a hearing if it finds that:

        (1)    A reasonable probability exists that the defendant would not have been prosecuted or convicted if exculpatory results had been obtained through DNA analysis, even if the defendant later pled guilty or no contest;

        (2)    Identity was or should have been an issue in the proceeding that led to the verdict or sentence;

        (3)    <u>The evidence sought to be analyzed has been identified with particularity and still exists in a condition that permits DNA analysis</u>; provided that questions as to the chain of custody of the evidence shall not constitute grounds to deny the motion if the testing itself can establish the integrity of the evidence;

(continued...)

7

HRS § 844D-126 (2014) establishes requirements for the retention of biological evidence after a judgment of conviction has been entered. HRS § 844D-126 provides:

> (a) All evidence in the custody or control of a police department, prosecuting attorney, laboratory, or court that is related to the investigation or prosecution of a case in which there has been a judgment of conviction and that may contain biological evidence that could be used for DNA analysis shall be retained at least until the later occurring of either:
>
> > (1) The exhaustion of all appeals of the case to which the evidence is related; or
> >
> > (2) <u>The completion of any sentence, including any term of probation or parole, imposed on the defendant in the case to which the evidence relates</u>.
>
> (b) The attorney general shall establish procedures and protocols, which shall be uniform throughout the State, for the collection and preservation of evidence retained pursuant to this section.

(Emphasis added.)

However, HRS Chapter 844D, Part XI, including HRS § 844D-123, was enacted in 2005, was not made retroactive, and went into effect on July 1, 2005. 2005 Haw. Sess. L. Act 112, §§ 1, 7 at 290-94, 296. DeCaires does not contend, and there is no evidence indicating, that any trial evidence containing biological evidence that could be used for DNA analysis was lost or destroyed after July 1, 2005. Accordingly, there is no showing that the State violated the procedures for retention of evidence established by HRS § 844D-123, and DeCaires cannot assert a violation of his due process rights based on HRS § 844D-123.

---

[3/] (...continued)

> (4) The evidence was not previously subjected to DNA analysis or was not subjected to analysis that can now resolve an issue not resolved by previous analysis; and
>
> (5) The application for testing is made for the purpose of demonstrating innocence and not to unreasonably delay the execution of sentence or administration of justice.

In any event, the Circuit Court found that the rape kit that DeCaires alleged had been prepared never existed and that "there was in fact no rape kit prepared in connection with his case." We conclude that this finding was not clearly erroneous. DeCaires cannot rely on the alleged loss or destruction of a non-existent rape kit as the basis for his claim for post-conviction relief. In addition, whether DNA analysis of the other trial evidence would have identified the attacker or provided evidence favorable to DeCaries is uncertain. The Circuit Court found that according to available reports, a pair of blue jeans, beige panties, and a tampon that were admitted into evidence at DeCaires' trial were tested for the presence of seminal fluid with negative results. DeCaires also presented no evidence that the CW's attacker had come into contact with such trial evidence. Under the circumstances of this case, we conclude that DeCaires' claim for post-conviction relief is without merit.

CONCLUSION

We affirm the Circuit Court's Order Denying Motion for DNA Testing.

DATED: Honolulu, Hawai'i, November 30, 2015.

On the briefs:

Randall K. Hironaka
(Miyoshi & Hironaka)
for Defendant-Appellant

James M. Anderson
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge